IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION, doing business as GLAXOSMITHKLINE,<br><br>    Plaintiff,<br><br>  v.<br><br>ABBOTT LABORATORIES,<br><br>    Defendant. | No. C 07-5702 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT<br>(Docket No. 489) |

Plaintiff Smithkline Beecham Corporation, doing business as GlaxoSmithKline (GSK), moves for entry of judgment. Defendant Abbott Laboratories opposes the motion in part. The motion was taken under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS GSK's motion in part and DENIES it in part.

## BACKGROUND

Because the Court's January 14, 2011 Order Denying Abbott's Motions for Summary Judgment amply recites the background of this case, the Court offers a truncated discussion below.

GSK brought four claims against Abbott: (1) violation of the Sherman Act, 15 U.S.C. § 2; (2) breach of the covenant of good faith and fair dealing; (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1; and (4) violation of North Carolina's prohibition on monopolization, N.C. Gen. Stat. § 75-2.1.

A jury trial in this action began on February 28, 2011. On March 24, 2011, before the case was submitted to the jury, Abbott

moved for judgment as a matter of law. See Fed. R. Civ. P. 50(a). The Court did not grant the motion and submitted the case to the jury.

On March 30, 2011, the jury rendered its verdict. The jury found for Abbott on GSK's § 2 claim, but for GSK on its claim for breach of the implied covenant. The jury concluded that Abbott breached the implied covenant that inhered to the parties' Norvir license agreement and did so through "grossly negligent conduct." For this, the jury awarded GSK $3,486,240.00 in damages.

For GSK's UDTPA claim, the jury was asked whether Abbott committed any of the three following acts:[1]

a. During the negotiation of the Norvir Boosting License, Abbott was considering how to use its control over Norvir to limit competition with Kaletra and deliberately withheld this from GSK.

b. Abbott inequitably asserted its power over Norvir by increasing Norvir's price by 400 percent to undermine and disrupt Lexiva's launch and future sales.

c. Abbott manipulated the timing of the 400-percent Norvir price increase in order to disrupt Lexiva's launch and undermine Lexiva's future sales.

---

[1] A fourth question, regarding whether Abbott monopolized or attempted to monopolize the market in which Kaletra competes, was included in the preliminary jury instructions. The Court did not submit this question to the jury because the parties agreed it was redundant.

2

These questions were based on GSK's proposed jury instructions.[2] The jury concluded that GSK did not meet its burden to prove that Abbott committed the second or third acts. The jury found that Abbott committed the first act, but that this conduct was not the proximate cause of injury to GSK.

## DISCUSSION

GSK asks the Court to enter judgment as follows: (1) for Abbott on GSK's § 2 claim; (2) for GSK, in the amount of $4,549,590.96, on its claim for breach of the implied covenant; (3) for GSK, in the amount of $11,522,070.96, on its UDTPA claim; and (4) for Abbott on GSK's claim under N.C. Gen. Stat. § 75-2.1. The amount sought by GSK on its breach of the implied covenant claim includes pre-judgment interest. Abbott does not oppose GSK's motion, except to the extent that GSK seeks judgment in its favor on its UDTPA claim.

To prevail on a UDTPA claim, "a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury." Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 72 (2007). "Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace." Marshall v. Miller, 302 N.C. 539, 548 (1981) (citation omitted).

---

[2] GSK explicitly stated that the factual questions posed to the jury reflected the bases of its UDTPA claim. During a discussion about the jury instructions at the final pretrial conference, GSK's counsel stated, "We believe the . . . questions that were in the proposed . . . jury instructions that your Honor passed out are the right ones, because those are the things that we contend violate the North Carolina unfair competition statute." Feb. 8, 2011 Tr. at 26:19-22.

3

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Id. (citation omitted). Whether an act is unfair or deceptive is a question of law for a court. Walker, 362 N.C. at 71. However, a "jury determines in what amount, if any, the complaining party is injured and whether the occurrence was the proximate cause of those injuries." Ausley v. Bishop, 133 N.C. App. 210, 217 (1999) (citing Barbee v. Atl. Marine Sales & Serv., 115 N.C. App. 641, 647 (1994)); see also G.P. Publ'ns, Inc. v. Quebecor Printing-St. Paul, Inc., 125 N.C. App. 424, 442 (1997) (affirming denial of JNOV motion on UDTPA claim for which jury found that defendant committed the alleged unfair act but that the act did not proximately cause harm to plaintiff).

As noted above, GSK provided factual questions that reflected the bases of its UDTPA claim. Based on those questions, the jury concluded that GSK did not prove that Abbott increased Norvir's price by 400 percent to undermine and disrupt Lexiva's launch. Nor did GSK prove that Abbott manipulated the timing of the Norvir price increase to disrupt GSK's launch of Lexiva. The jury only found that Abbott deliberately withheld its intent to use its control over Norvir to limit competition. However, the jury found that this act was not the proximate cause of injury to GSK. Thus, the Court need not decide whether this act constituted an unfair or deceptive practice under the UDTPA.

Nevertheless, GSK insists that the jury's finding that Abbott engaged in grossly negligent conduct when it breached the implied

4

covenant of good faith and fair dealing warrants judgment in GSK's favor on its UDTPA claim. However, this finding does not support GSK's UDTPA claim. This finding alone does not show that Abbott committed an unfair or deceptive act, as defined by the UDTPA, because it does not speak to the breach's impact on the marketplace, which is a factor to be considered. Additionally, as explained above, GSK committed to rest its UDTPA claim on the acts reflected on the verdict form.

GSK points to the jury's finding that "Abbott deliberately withheld that it was considering ways to use Norvir to harm GSK and competitors . . . ." GSK's Opp'n to Abbott's JMOL Mot. 9:8-11. This finding cannot support GSK's UDTPA claim; the jury concluded that this act did not proximately cause GSK injury.

Finally, GSK argues that the "evidence, viewed in the light most favorable to GSK, could support a finding that Abbott violated" the UDTPA. GSK's Opp'n to Abbott's JMOL Mot. 8:1-2. That the evidence could support such a finding warranted denying Abbott's motion for summary judgment; it does not, however, justify entering judgment in GSK's favor.

## CONCLUSION

For the foregoing reasons, the Court GRANTS GSK's motion in part and DENIES it in part. (Docket No. 489.) The Clerk shall enter judgment for Abbott on GSK's claims under the Sherman Act, the UDTPA and N.C. Gen. Stat. § 75-2.1. The Clerk shall enter judgment for GSK, in the amount of $4,549,590.96, on its claim for breach of the implied covenant of good faith and fair dealing. This amount includes pre-judgment interest, as provided under New

York law.  Each party shall bear its own costs.  The Clerk shall enter judgment forthwith.

As noted above, Abbott moved for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a), before this case was submitted to the jury.  To the extent that this motion was directed at GSK's Sherman Act, UDTPA and N.C. Gen. Stat. § 75-2.1 claims, the motion is moot.  Abbott may renew its motion, pursuant to Rule 50(b), with respect to GSK's claim for breach of the implied covenant.  In accordance with that rule, Abbott's motion shall be due within "28 days after the entry of judgment."  Fed. R. Civ. P. 50(b).  If one is filed, GSK's opposition shall be due fourteen days thereafter, and Abbott's reply shall be due seven days after that.  Any renewed motion for judgment as a matter of law will be taken under submission on the papers.

IT IS SO ORDERED.

Dated: 7/8/2011

CLAUDIA WILKEN
United States District Judge

6