IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SMITHKLINE BEECHAM CORPORATION, )
d/b/a GLAXOSMITHKLINE,          )
                                )
            Plaintiff,          )
                                )
    v.                          )    1:15CV360
                                )
ABBOTT LABORATORIES,            )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This case was transferred to this district following lengthy proceedings in the Northern District of California. The case involves a dispute between SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") as Plaintiff and Abbott Laboratories ("Abbott") as Defendant. Just prior to the scheduled trial in California,[1] GSK filed an Amended Complaint. (Second Amended Complaint ("Second Am. Compl.") (Doc. 632).) A change in the scope of the Amended Complaint led to a question of the Northern District of California's personal jurisdiction

---

[1] While there was a trial in 2011, on appeal, the Ninth Circuit remanded the case for a new trial due to a jury selection issue. See SmithKline Beecham Corp. v. Abbott Labs., 740 F.3d 471, 474 (9th Cir. 2014). The scheduled trial referenced here refers to the second trial, scheduled to occur after the Ninth Circuit remand.

over the case and the parties thereafter stipulated to a
transfer of this case to the Middle District of North Carolina.
(See Stipulation and Order to Transfer Pursuant to 28 U.S.C.
§ 1631 ("Stipulation") (Doc. 681).) Following a status
conference held in this district in May 2015, Abbott filed an
Answer to the Amended Complaint (Doc. 707), a Motion for
Judgment on the Pleadings Based on Changed Choice-of-Law
Principles (Doc. 710), a Motion Requesting that its Motion on
the Pleadings be Fully Briefed and Heard before Trial (Doc.
712), and a Status Report (Doc. 708). Plaintiff GSK also filed a
Status Report. (See Doc. 714.)

I. **PROCEDURAL HISTORY**

The procedural history of this case is complex. The case
involves a dispute over a 2003 price increase for an HIV drug
sold by Abbott called Norvir. (See Abbott Laboratories' Status
Report ("Abbott's Status Report") (Doc. 708) at 3-4.)[2] Norvir is
a low-dose "booster" for a group of full regimen HIV drugs
called protease inhibitors, meaning that a course of one or two
Norvir pills per day is prescribed to increase the effectiveness

---

[2] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

of other HIV treatments, which typically require many more pills per day.[3] (Id.) Abbott began to sell market licenses for Norvir to its competitors, including one negotiated in 2002 with GSK that allowed GSK to market its own HIV drugs to be co-administered with Norvir. (Id.) After signing this agreement with GSK, at some point in 2003, Abbott increased the price of Norvir from $1.71 per day to $8.57 per day, an increase of over 400%. (Id. at 4.) In 2007, GSK brought suit against Abbott in the Northern District of California, and its 2009 Amended Complaint alleged claims for violations of federal and state antitrust claims, a claim for breach of the implied covenant of good faith and fair dealing in the licensing agreement, and a claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), codified at N.C. Gen. Stat. § 75-1.1. (See First Amended Complaint ("First Am. Compl.") (Doc. 170).) In 2011, the case was tried on all four claims, with the jury finding in favor of GSK only as to the claim for breach of implied covenant. See SmithKline Beecham Corp. v. Abbott Labs., 740 F.3d 471, 475 (9th Cir. 2014). GSK appealed and the Ninth

---

[3] Although it eventually found its market niche as a booster, Norvir was initially created, marketed and, perhaps most importantly to the merits of the dispute, priced as a full HIV treatment regimen of 12 pills per day. (Abbott's Status Report (Doc. 708) at 3-4.)

Circuit vacated the verdict and remanded on the basis that a juror was improperly excluded on the basis of sexual orientation. Id. at 475-76.

On remand, Abbott moved for a Rule 50(a) motion for judgment as a matter of law on the antitrust and UDTPA claims. (See Doc. 591.) The district court denied that motion, holding that GSK had presented sufficient evidence on its antitrust claims and that its UDTPA claim could survive because antitrust liability was sufficient to establish unfair trade practices liability. (See Doc. 591 at 14, 15 n.5, 16.) Trial was set for May 2015, but on March 10, 2015, GSK was granted leave to amend its complaint a second time. (See Doc. 631.) The Second Amended Complaint was changed from the first only in that it dropped GSK's causes of action for both federal and state antitrust violations. (See generally Second Am. Compl. (Doc. 632).) As a result of this change, the parties and the court were concerned that the Northern District of California no longer had personal jurisdiction over the case, absent the Sherman Act claims.[4] The court entered an order resolving all pending motions in limine,

---

[4] The Sherman Act grants nationwide jurisdiction, which is how the parties were able to litigate in the Northern District of California to begin with. See 15 U.S.C. §§ 15, 22, 26; (see also First Am. Compl. (Doc. 170).)

- 4 -

(Doc. 679), and the parties then entered into a stipulation, adopted by the court, that transferred the case to this district. (Stipulation (Doc. 681).)

At issue currently is a dispute between the parties on the trial-readiness of the case as it currently stands. Abbott contends that there are several motions that need to be resolved before the parties can proceed to trial, (Abbott's Status Report (Doc. 708) at 3), while GSK believes that each of these motions has either already been resolved, is without merit, or can be handled during trial. (GSK's Status Report ("GSK's Status Report") (Doc. 714) at 5.)

**II.   THE MOTIONS AT ISSUE**

    **A.   Motion for Judgment on the Pleadings Based on Choice of Law**

Abbott contends that the first issue the court must address is whether North Carolina, Pennsylvania, or New York law governs the UDTPA claim. (See Motion for Judgment on the Pleadings Based on Changed Choice-of-Law Principles ("Abbott's 12(c) Mot.") (Doc. 710), Abbott Laboratories' Brief in Support of Its Rule 12(c) Motion for Judgment on the Pleadings Based on Changed Choice-of-Law Principles ("Abbott's 12(c) Br.") (Doc. 711) at 8 (arguing specifically that North Carolina's unfair competition law does not apply).) Abbott contends that the choice-of-law

analysis as to the UDTPA claim has been altered by the change in venue, (see Abbott's Status Report (Doc 708) at 10; Abbott's 12(c) Br. (Doc. 711) at 7-22), and that if Pennsylvania or New York law is found to apply, judgment on the pleadings in its favor will be warranted on the UDTPA claim. (Abbott's 12(c) Br. (Doc. 711) at 19.)

First, Abbott is correct in that, because of the transfer, North Carolina choice-of-law rules will apply. This is a diversity action under 28 U.S.C. § 1332, (Second Am. Compl. (Doc. 632) ¶ 9), and as such, the court should usually apply the choice-of-law rules of the forum state. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 49 n.11 (4th Cir. 1983). However, when the case is in a court due to a transfer, the choice of law depends on the nature of that transfer. Here, the case was transferred to cure a want of jurisdiction under 28 U.S.C. § 1631,[5] which reads:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which

---

[5] Although there is case law confusion as to which jurisdictional transfers section 1631 applies to, the parties here stipulated to that section in the transfer order. (See Stipulation (Doc. 681) at 2.)

> the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal <u>shall proceed as if it had been filed in or noticed for the court to which it is transferred</u> on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added).

While the Fourth Circuit has not ruled on this issue, other courts have held that the underlined language means that when a case is transferred to cure jurisdiction, the law of the transferee forum must apply. See <u>Viernow v. Euripides Dev. Corp.</u>, 157 F.3d 785, 793 (10th Cir. 1998). Further, it does not appear that GSK disputes that North Carolina choice-of-law rules will apply. (<u>See</u> GSK's Status Report (Doc. 714) at 6-11.)

As to the merits, full briefing is required on this issue: (1) because the choice-of-law rules in North Carolina are at least somewhat conflicted in the test that they apply; and (2) because the North Carolina, Pennsylvania, and New York versions of a UDTPA claim require proof of different elements, some of which appear to have the potential to be dispositive. For example, North Carolina law requires a showing of: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." <u>Miller v. Nationwide Mut. Ins. Co.</u>, 112 N.C. App.

- 7 -

295, 301, 435 S.E.2d 537, 542 (1993) (citation omitted). Contrast this with Pennsylvania's comparable law, which Abbott contends is codified at 73 Pa. Cons. Stat. § 201-9.2. (See Abbott's 12(c) Br. (Doc. 711) at 3.) That Pennsylvania provision provides for a private cause of action for persons who "purchase or lease goods or services primarily for consumer use rather than for commercial use." See In re Smith, 866 F.2d 576, 583 (3d Cir. 1989); see also 73 Pa. Cons. Stat. § 201-9.2. In New York, on the other hand, "[t]o prove deceptive trade practices under New York General Business Law § 349, plaintiffs must establish the following: '(1) the defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way; and (3) the plaintiff has been injured as a result.'" Gross v. Bare Escentuals Beauty, Inc., 632 F. Supp. 2d 293, 299 (S.D.N.Y. 2008) (quoting Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)); see also N.Y. Gen. Bus. Law § 349.

Abbott contends that under either Pennsylvania law or New York law, judgment on the pleadings in its favor would be warranted. (See Abbott's 12(c) Br. (Doc. 711) at 3.) In a motion made under Rule 12(c), the court must accept all of the non-movant's factual averments as true and draw all reasonable inferences in its favor. Atwater v. Nortel Networks, Inc., 394

- 8 -

Case 1:15-cv-00360-WO-JLW   Document 717   Filed 03/10/16   Page 8 of 18

F. Supp. 2d 730, 731 (M.D.N.C. 2005); Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Bradley, 329 F. Supp. 2d at 622. The standard is similar to that used in ruling on Rule 12(b)(6) motion, "with the key difference being that on a 12(c) motion, 'the court is to consider the answer as well as the complaint.'" Cont'l Cleaning Serv. v. United Parcel Serv., Inc., No. 1:98CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999) (citation omitted).

Given that each state's law appears to require a separate and unique element, the choice of which law applies to this suit could affect both the viability of the claim and the evidence that the parties will need to prepare to put on at trial. As such, this court finds that this is an issue that needs to be resolved before the case moves to trial. Abbott has filed a brief that sets forth its arguments for what law should be applied and in support of its 12(c) motion. (See Abbott's 12(c) Br. (Doc. 711).) Although GSK has set forth the structure of a counter-argument as to choice of law in its status report, (see GSK's Status Report (Doc. 714) at 5-10), it has not yet responded to Abbott's motion. This court finds that it is

- 9 -

necessary for GSK to respond to the motion so that the case can proceed.

**B.   Abbott's Alternative Proposed Motion**

Abbott further requests that, if this court finds that North Carolina law applies, it be allowed to file a fifteen-page dispositive motion on GSK's UDTPA claims, which they frame as a summary judgment motion.[6] (See Abbott's Status Report (Doc. 708) at 11-14.)

Abbott's primary contention is that, in the absence of the antitrust claims, GSK's UDTPA claims are essentially just a re-labeling of its breach-of-implied-covenant claims. (Id. at 13.) Abbott cites to segments of a hearing conducted by Judge Claudia Wilken in the Northern District of California after GSK amended its complaint that Abbott contends highlight the vulnerable nature of these claims in the absence of the

---

[6] The dynamic here presents a two-tiered analysis. First, the choice-of-law question arises. This issue requires briefing so the court can rule accordingly. Should Pennsylvania or New York law be applied, Abbott argues that this court should grant its Rule 12(c) motion. (See Abbott's 12(c) Mot. (Doc. 710); Abbott's 12(c) Br. (Doc. 711) at 3.) However, should North Carolina law be applied, Abbott seeks to file this short dispositive motion it qualifies as "a short motion for summary judgment, which will focus on dispositive legal issues." (Abbott's Status Report (Doc. 708) at 14.) Thus, GSK will need to respond to Abbott's tiered argument as it relates to the choice-of-law issue.

antitrust claims and argues that breach-of-contract claims cannot be the basis for a UDTPA claim absent substantial aggravating factors. (Id. at 13-14 (citing Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013)).)

GSK argues that Abbott has filed multiple motions attempting to get the UDTPA claim dismissed, all of which were denied, and that the amendment to the complaint does not affect the validity of the UDTPA claim. (See GSK's Status Report (Doc. 714) at 11-13.) Further, they argue that the comments by Judge Wilken were just that: non-binding comments. (Id. at 13.) Because Judge Wilken made no rulings on the UDTPA claim, GSK asserts that her statements have no preclusive effect, even though it is clear that she was growing skeptical of the claim's validity. (Id.)

Here, the UDTPA claim is essentially unchanged, and, as GSK notes, Abbott's multiple motions to this effect have been denied before. While this context could hinder its ability to attack the new complaint, there is some authority suggesting that, because an amendment operates as a new complaint that supersedes and moots those prior, an amended complaint may be subject to the same challenges as any other complaint. Significantly, the Fourth Circuit does not appear to have ruled on this issue, but

other courts have held that amending a complaint, even after a favorable ruling on a particular cause of action, re-sets the stage for further responsive motions. In <u>In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation</u>, the court held that defendants were not barred from moving to dismiss an amended complaint, even though some claims for which dismissal had been denied in the previous complaint were essentially unchanged. 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010). The court noted that the law-of-the-case doctrine is discretionary and is not a limit on the court's power to "revisit, revise, or rescind an interlocutory order prior to entry of final judgment in the case." <u>Id.</u>

However, this court is not persuaded that previously ruled-upon dispositive motions, particularly those disposed of on summary judgment, should be re-heard unless some new issue is raised. The only new matter suggested by Abbott and persuasive to this court is the question of whether dismissal of the antitrust claims might result in a different result as to the UDTPA claim. As such, this court will allow a very limited alternative briefing, discussing only the effect of the removal of the antitrust claims from the complaint on a North Carolina UDTPA claim.

- 12 -

C.  **Briefing on Jury Instructions and Verdict Forms**

Abbott contends that, before transferring the case, Judge Wilken noted several issues with the jury instructions and verdict forms that she wished to fix. (Abbott's Status Report (Doc. 708) at 14-16.) Abbott contends that those issues need to be resolved before trial or else the parties will not know what issues they should prepare to try. (Id. at 16.) GSK counters that the elements of a UDTPA case are well established and thus there is no reason to deviate from the norm of fashioning jury instructions during trial. (GSK's Status Report (Doc. 714) at 14.)

This court finds that Abbott has put forth no compelling argument as to why this issue cannot be resolved at trial, particularly in light of the fact that briefing will be held on both choice-of-law issues and, alternatively, whether the North Carolina UDTPA claim was affected by dismissal of the antitrust claim.

D.  **Abbott's Daubert Motion**

Abbott also seeks to be heard on excluding one of GSK's damages experts, Dr. Stephen Prowse. (Abbott's Status Report (Doc. 708) at 16-18.) Dr. Prowse testified at the 2011 trial, and prior to transfer, Judge Wilken denied a motion by Abbott to

exclude him from the retrial.[7] (See id. at 16; GSK's Status Report (Doc. 714) at 15.) Abbott contends that Dr. Prowse has submitted two supplemental reports that include new damages estimates that fluctuate significantly from his original estimates by nearly half a billion dollars. (Abbott's Status Report (Doc. 708) at 17.) GSK has asserted that, even if Judge Wilken's latest ruling denying Abbott's motion is moot, her ruling allowing Dr. Prowse to testify during the 2011 trial is still the law of the case, as his methodology has not changed. (GSK's Status Rep. (Doc. 714) at 15-16.)[8]

Initially, it appears to this court that this is an issue as to the weight of Dr. Prowse's conclusions, rather than as to his qualifications or methodology. GSK contends that these are the same methodologies that were allowed at the previous trial,

---

[7] Abbott contends in part that, because Judge Wilkin no longer had jurisdiction over the case at the time of this ruling, this ruling is moot and not the law of the case. (Abbott's Status Report (Doc. 708) at 16.)

[8] Although Abbott refers to a "brewing dispute over discovery" and complains that GSK has construed its discovery "obligation" so narrowly as to render it meaningless, (see Abbott's Status Report (Doc. 708) at 17 n.4), these arguments do not change the analysis. GSK points out that the court merely reopened discovery to permit Abbott to request documents, which it has not yet done, but nevertheless GSK is in the process of collecting the documents at issue and will provide them in short order. (GSK's Status Report (Doc. 714) at 17-18.) Given that Abbott has not made any motion for discovery, its complaint on this front is currently without merit.

and that Abbott's damages expert has testified that they are commonly accepted in the field. (Id. at 15.) This court finds nothing in Abbott's report to persuasively suggest that the expert is now using changed methodologies or that he has become unreliable, and consequently finds that the law of the case prevents them from re-arguing about his testimony at trial. Thus, this court will find that this request should be denied without prejudice.

**E.   Motion in Limine on Contract Theory**

Finally, Abbott seeks to file a motion limiting the scope of GSK's claim for breach of the implied covenant of good faith and fair dealing that would preclude GSK from basing that claim on an increase in the price of Norvir. (Abbott's Status Report (Doc. 708) at 18-20.) GSK responds both that Abbott has mischaracterized its claim and that the appropriate way to deal with this issue is via a motion for judgment as a matter of law ("JMOL") at the close of evidence. (GSK's Status Report (Doc. 714) at 16-17.) Abbott points to Judge Wilken's concerns about the illegality of that conduct but does not explain why this issue needs to be heard before trial.

Because Abbott has put forth no compelling argument as to why this would be appropriate to resolve before the JMOL stage

or why GSK should not be permitted to put forth evidence on this issue, this court finds that this motion is inappropriate at this time and this request will be denied without prejudice.

### III. CONCLUSION

As a result of the foregoing, this court finds as follows:

1. Briefing should proceed to address the choice-of-law issue. Abbott has filed a motion, (Doc. 710), contending that either Pennsylvania or New York law applies and that Abbott is entitled to judgment on the pleadings. GSK is hereby directed to respond to that motion within thirty (30) days of the entry of this order. Abbott shall thereafter have fourteen (14) days to file a reply.

2. To the extent appropriate, Abbott may file a motion and brief seeking dismissal of the North Carolina UDTPA claim to the extent that Abbott contends that dismissal of the antitrust claim supports dismissal of the related claim. The brief in support of the motion shall be limited to twelve (12) pages in length. GSK may file a response, no more than ten (10) pages in length, and Abbott may file a reply of no more than five (5) pages in length. The parties should bear in mind that the prior trial transcripts as well as the Ninth Circuit opinion are now a

part of the record, such that extensive factual recitations are not necessary.

3. Abbott's requests to file a Daubert motion and to limit the instructions and consideration of the contract theory are both denied without prejudice.

4. Because of the complexity of this case, the procedural history, the choice-of-law issues, and the potential for wasted judicial resources if this case is ultimately set for trial before a different court, this court will retain jurisdiction of this matter through trial. In light of the briefing, this court is considering a peremptory trial setting in either August or October 2016. The parties are directed to confer and advise the court in a joint filing of the anticipated length of trial as well as availability of the parties and counsel for a trial date in either August or October 2016.

Consequently, to the extent that it is consistent with this Memorandum Opinion and Order, Defendant's Motion Requesting that its Motion for Judgment on the Pleadings be Fully Briefed and Heard Before Trial (Doc. 712) is **GRANTED IN PART AND DENIED IN PART** without prejudice.

**IT IS SO ORDERED.**

This the 10th day of March, 2016.

                                            /s/ William L. Osteen, Jr.
                                              United States District Judge